**13-2468**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| **United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC,** and **Local Union 193-G,** | On Appeal from the U.S. District Court, Central District of Illinois, Urbana Division |
| | Case No. 2:09-cv-02306 |
| Plaintiffs-Appellants, | The Hon. Harold A. Baker, Judge Presiding |
| v. | |
| **PPG Industries, Inc.,** | |
| Defendant-Appellee. | |

## BRIEF AND APPENDIX OF PLAINTIFFS-APPELLANTS

Stephen A. Yokich, Esq.
CORNFIELD AND FELDMAN LLP

Suite 1400
25 East Washington Street
Chicago, Illinois  60606-1803

(312) 236-7800
(312) 236-6686 (fax)

Attorneys for Plaintiffs-Appellants

Dated:  September 12, 2013

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>13-2468</u>

Short Caption: <u>United Steel . . . Workers International Union, etc., and Local Union 193-G v. PPG Industries, Inc.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement stating the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

<u>United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers</u>

<u>International Union, AFL-CIO, CLC; and</u>

<u>Local Union 193-G</u>

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Cornfield and Feldman LLP</u>

(3)     If the party or amicus is a corporation:

i)     Identify all its parent corporations, if any; and

<u>N/A</u>

ii)     list any publicly held company that owns 10% or more of the party's or amicus' stock:

<u>N/A</u>

=================================================================================

Attorney's Signature: <u>/s/ Stephen A. Yokich</u>                    Date: <u>September 12, 2013</u>

Attorney's Printed Name: <u>Stephen A Yokich</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes __X__ No ____**

Address: <u>25 East Washington Street, Suite 1400</u>

<u>Chicago, Illinois  60602-1803</u>

Phone Number: <u>(312) 236-7800</u>

Fax Number: <u>(312) 236-6686 (fax)</u>

E-Mail Address: <u>syokich@cornfieldandfeldman.com</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II.   PPG Violated the Arbitrator's Award by Imposing
      Proposals That the Arbitrator Had Ruled Untimely . . . . . . . . . . . . . . . . . . 14

      A.    "Discretionary" Means "May Not Be Permitted
            Unless Agreed." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      B.    Any Ambiguity in the Arbitrator's Award May Be
            Resolved by Referring to His Opinion . . . . . . . . . . . . . . . . . . . . . 16

      C.    Post-Arbitration Conduct of the Parties . . . . . . . . . . . . . . . . . . . 18

      D.    Briefs to the Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      E.    The District Court Rendered the Award Meaningless . . . . . . . . . . 23

      F.    Concerns of Unfairness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

III.  All Economic Concessionary Terms Other Than
      Lower Wages for 2nd-tier Employees Are Invalid . . . . . . . . . . . . . . . . . . 27

      A.    The Arbitrator Did Not Rule That All of PPG's
            Proposals Were Timely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## **TABLE OF CONTENTS** (cont'd)

**Page**

B.    The Only Economic Concession Approved by the Arbitrator
Was Wage Cuts for Employees in the Bottom Tier . . . . . . . . . . . . . 32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CERTIFICATE OF COMPLIANCE

APPENDIX

Table of Contents of Appendix

Circuit Rule 30(d) Certificate

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

*Brotherhood of Locomotive Engineers and Trainmen v. Union Pacific R. Co.*, 500 F.3d 591 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 17

*Chaklos v. Stevens*, 560 F.3d 705 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908 (7th Cir. 2010) . . . . . . . . . . 13

*Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180 (7th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273 (7th Cir.1992) . . . . . . . . . . . . 16

*Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001) . . . . . 3 n.1

*N.L.R.B. v. Solutia, Inc.*, 699 F.3d 50 (1st Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . 25

*Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274 (7th Cir. 1989), . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 17 n.2, 21

*Tri-State Business Machines, Inc. v. Lanier Worldwide, Inc.*, 221 F.3d 1015 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United Paperworkers Int'l Union v. Misco*, 484 U.S. 29 (1987) . . . . . . . . . . . 3 n.1

*Williams v. U.S. Steel, Div. of USX Corp.*, 70 F.3d 944 (7th Cir. 1995) . . . . . . . 16

# JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 29 U.S.C. § 185 ("Suits by and against labor organizations"), and 28 U.S.C. § 1331 and § 1337.  The Plaintiffs-Appellants are labor unions representing employees of the Defendant-Appellee, an employer engaged in an industry affecting commerce.  In their Complaint, the Plaintiffs-Appellants sought to enforce a labor arbitration award against the Defendant-Appellee.

This Court has jurisdiction of the appeal under 28 U.S.C. § 1291.  On September 27, 2012, the District Court entered an order and judgment granting summary judgment to Defendant.  On October 24, 2012, Plaintiffs filed a motion to alter or amend the judgment under Fed. R. Civ. P. 59.  On June 5, 2013, the District Court entered an order denying Plaintiffs' motion.  Plaintiffs filed their notice of appeal on July 1, 2013, appealing from the District Court's order and judgment dated September 27, 2012, and its order dated June 5, 2013.  The appeal is from a final order or judgment that disposes of all parties' claims.

# STATEMENT OF THE ISSUE

Whether the District Court erred in failing to hold that Defendant-Appellee violated the arbitration award by imposing, as conditions of employment, bargaining

proposals that the arbitrator had ruled were not timely presented at the bargaining conference.

## STATEMENT OF THE CASE

On December 16, 2009, Plaintiffs-Appellants United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC  and its Local 193-G (collectively, "the Union") filed a Complaint against Defendant-Appellee PPG Industries, Inc. ("PPG"), seeking to enforce an arbitration award.  The Union alleged that PPG had violated the award of Arbitrator Donald J. Petersen, dated November 8, 2009, by imposing, as conditions of employment, bargaining proposals that the arbitrator had ruled were not timely presented at the parties' bargaining conference.

The Union and PPG filed cross-motions for summary judgment.  On September 27, 2012, the District Court granted PPG's motion and denied the Union's motion.  On June 5, 2013, the District Court denied the Union's motion to reconsider.  The Union timely filed its notice of appeal on July 1, 2013.

## STATEMENT OF FACTS

The Union represents a bargaining unit of production and maintenance employees at PPG's facility in Mt. Zion, Illinois (Doc. 17, Def. Answer, ¶ 3). PPG manufactures glass products at this facility (App. 14, Arbitration Award, p. 2).[1]

PPG is a business engaged in commerce, as defined by 29 U.S.C. §152(2), (6) and (7) of the Labor-Management Relations Act (Doc. 17, Def. Answer, ¶ 2). The Union is a labor organization representing employees in an industry affecting commerce, as defined by 29 U.S.C. §152(5) of the Labor-Management Relations Act (Doc. 17, Def. Answer, ¶ 1).

The Union and PPG were parties to a collective bargaining agreement (hereinafter "the 2002 Agreement"), which was effective, in its initial term, between June 15, 2002 and June 15, 2008 (Doc. 17, Def. Answer, ¶ 4).

Article XXXIV of the 2002 Agreement ("Duration of Agreement") states as follows:

> **Section 1**. This Agreement, as amended June 15, 2002, shall continue in full force and effect until 12:00 Noon on June 15, 2008, and from year to year thereafter, unless

---

1    If an arbitrator acts within the scope of the authority granted to him by the parties, the arbitrator's fact-finding will be upheld by the court. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 36-38 (1987). Accordingly, the Union cites to the arbitration award in its statement of facts.

terminated as hereinafter provided.  Notwithstanding the foregoing, Article IX, Section 7, will remain in full force and effect in accordance with its terms.

**Section 2**.  Should either party desire to discontinue or modify the existing agreement upon any termination date, at least thirty (30) days prior written notice of such intent must be given to the other party hereto. In the event of notice of cancellation or modification of the agreements, it shall be the duty of the parties to meet in conference not less than (10) days prior to the expiration date of said agreement for the purpose of negotiating new or modified agreements.

**It is further agreed that proposed changes or new agreements shall be presented not later than the first day of the conference by the party serving notice.**"

(App. 12; Doc. 1-1, 2002 Agreement, p. 22 (emphasis added).)

In the 2002 negotiations between the parties, the Union wanted to remove the last two sentences of Article XXXIV, Section 2 (App. 17, Award, p. 5, n. 7). However, the last two sentences of Article XXXIV, Section 2 remained in the 2002 Agreement, indicating that PPG must have rejected the Union's proposal to remove this provision (Doc. 20-2, Mezo Aff., ¶ 14).

On June 13, 2008, the Union and PPG entered into a settlement agreement that extended the 2002 agreement for one year, with a small number of changes noted in the settlement agreement (Doc. 20-2, Mezo Aff., ¶ 4; Doc. 20-7).

-4-

In April 2009, the Company provided notice to Local 193-G of its desire to modify the existing collective bargaining agreement (Doc. 17, Def. Answer, ¶ 11).

The first date of the parties' negotiating "conference," within the meaning of Article XXXIV, was June 1, 2009 (App. 21, Award, p. 9).

In May, 2009, prior to the first date of the negotiating conference, PPG representative Thomas Mordowanec met with Union representative Michael ("Mike") Mezo at Chicago's O'Hare Airport. Mezo was the only Union representative present. Mordowanec stated PPG's desire to bring PPG's labor costs at the Mt. Zion plant down from $37 per hour to or below $27 per hour. Mordowanec referenced the October, 2008 negotiations concluded at PPG's sister plant in Fresno, California, where a two-tiered wage system had been introduced (App. 15, Award, p. 3).

At this meeting, Mordowanec indicated that PPG intended to introduce at the upcoming negotiations the two-tiered wage system. General maintenance workers were to receive an increase to correspond to the area's prevailing wage patterns. Mordowanec stated that he hoped to buy out some current employees and that new hires and recalled employees would be placed on the second (lower) tier of the two-tiered system (App. 15-16, Award, pp. 3-4).

At this meeting, Mezo inquired if PPG could reach the $27 labor cost without requiring wage concessions from current employees. Mordowanec replied that he

was indifferent as to the means to achieve PPG's labor cost objective. He, however, indicated that the Fresno pattern would not be enough to attain PPG's cost goals. Mezo requested that the Fresno settlement be given to him and that PPG provide "blended" labor costs for the proposed two-tiered wage system (App. 16, Award, p. 4).

Mordowanec sent Mezo the information that Mezo had requested in an email dated May 28, 2009. Mordowanec's May 28, 2009 email contains a chart that shows a hypothetical two-tiered wage structure patterned after the agreement between the United Steelworkers of America and PPG for PPG's Fresno, California plant. Mordowanec's chart does not show any wage reductions for active employees (Doc. 20-8, Email dated May 28; Doc. 20-2, Mezo Aff., ¶ 5). After stating that the chart presented in the email results in labor costs $3.21 per hour above PPG's target of a $27 per hour labor cost, the first paragraph of Mordowanec's email ends as follows:

> We can save more money by more Tier 1 folks leaving and being replaced at a Tier II rates for the higher skill jobs. That would certainly be the best scenario. However, I really think it will be difficult to get to the $27 without significant concessions from current employees.

(Doc. 20-8, Email dated May 28.)

At the beginning of the parties' negotiating conference on June 1, 2009, Mordowanec made an opening statement in which he stated that PPG needed to get

-6-

labor costs down to $27 per hour. He also stressed the need for PPG to obtain a two-tiered wage system (App. 16, Award, p. 4).

On June 1, 2009, PPG made only "non-economic" bargaining proposals to the Union (App. 16, Award, p. 4; Docs. 20-9 and 20-10, PPG's June 1 proposals).

On the next day, June 2, 2009, Mezo stated that the Union was willing to agree to the "non-economic" proposals on a three-year basis. He also indicated that pursuant to Article XXXIV, Section 2, the Union was not obligated to bargain regarding proposals which followed the first day of bargaining i.e., June 1, 2009. Mezo stated, however, that the Union would bargain "provisionally" concerning PPG proposals presented after June 1, 2009 (App. 17, Award, p. 5).

PPG's proposals presented on June 2, 2009 contained economic concessionary proposals (from the Union's standpoint) regarding employee benefits such as health insurance (Doc. 20-2, Mezo Aff., ¶ 7; Docs. 20-11 and 20-12, PPG's June 2 proposals).

On June 3, 2009, PPG established proposed dollar amounts corresponding to the two-tiered wage structure (App. 17, Award, p. 5). These involved wage reductions not only for employees on the second tier, but also wage reductions for active employees (Doc. 20-2, Mezo Aff., ¶ 8; Doc. 20-13, June 3 proposals).

The Union did not agree in writing to any of the economic concessionary proposals presented by PPG during the 2009 negotiations between the parties (Doc. 20-2, Mezo Aff., ¶ 9).

The Union timely invoked the grievance procedure in the parties' collective bargaining agreement to challenge what the Union alleged were untimely PPG bargaining proposals after June 1, 2009 (Doc. 17, Def. Answer, ¶ 17). The Union and PPG failed to resolve the grievance, and the Union certified the grievance to arbitration (Doc. 17, Def. Answer, ¶ 18). In accordance with the collective bargaining agreement, the parties selected Donald J. Petersen to arbitrate the dispute (Doc. 17, Def. Answer, ¶ 19).

In a July 1, 2009 "Memorandum of Understanding," the parties agreed to an indefinite extension of "all the terms and conditions of the collective bargaining agreement" for the Mt. Zion plant, "except that either party may terminate this extension of the agreement on 30 days' written notice to the other party…." As originally drafted by PPG, the July 1, 2009 Memorandum of Understanding stated that "either party may terminate the agreement on 30 days' written notice to the other party…." However, Union representative Mezo objected to this wording, and the parties agreed on the substitute wording that either party may terminate "this extension of the agreement," which was written into the document by hand before it

-8-

was signed (Doc. 20-2, Mezo Aff., ¶ 10; Doc. 20-14, Memorandum of Understanding).

On September 9, 2009, PPG made the Union a "final" economic proposal (Doc. 22-3, Mordowanec Aff., ¶ 14)

On October 14, 2009, Arbitrator Donald J. Petersen held a hearing on the Union's grievance over PPG's allegedly untimely bargaining proposals. The parties introduced evidence, examined and cross-examined witnesses, and presented arguments (Doc. 17, Def. Answer, ¶ 20). In their post-hearing briefs, both parties assumed that if the arbitrator ruled that any of PPG's proposals were invalid, PPG would not be able to impose those proposals as conditions of employment (Doc. 20-26, PPG arbitration brf., pp. 11, 13)

On October 21, 2009, PPG gave the Union a 30-day notice to terminate the extension of the collective bargaining agreement (Mordowanec Aff., ¶ 20, Exh. C).

On November 8, 2009, Arbitrator Petersen issued his Opinion and Award. (Doc. 17, Def. Answer, ¶ 21; App. 13-23, Award.) Arbitrator Petersen granted the Union's grievance in part, ruling that certain PPG proposals were timely and that others were untimely (App. 22-23, Award, pp. 10-11). Referring to the requirement in Article XXXIV that proposed changes or new agreements "shall be presented not later than the first day of the conference by the party serving notice," the arbitrator

stated: "The word 'shall' is mandatory, not permissive.  Proposals made after the first day of conference are invalid."  (App. 21, Award, p. 9.)

The arbitrator ruled that proposals are valid if presented either on or before the first day of conference (App. 21, Award, p. 9).

The arbitrator ruled on the timeliness of PPG's bargaining proposals as follows:

> In the instant case, the Company indicated to the Union on May 14th that it was seeking a $10 reduction to its labor costs.  The Fresno agreement was also discussed which contained a two-tier wage structure.  Mr. Mordowanec indicated that the Fresno arrangement would not be enough, and that new hired and recalled employees would be placed on the bottom of the two-tiered system.

> On May 28, 2009, Mr. Mordowanec, responding to a request from Mike Mezo, sent a chart showing the blending of the two-tiered system came to $30.21.

> Therefore, the Union knew or should have know[n] some of the Company's economic proposals – specifically the Employer's labor cost goals as well as the two-tier wage structure.  The Company has preserved these proposals on the basis that the language of Article XXXIV, Section 2, permits, as previously discussed, discussion of proposals prior to the first day of conference.

> However, proposals made subsequent to the first date of conference may not be permitted unless expressly agreed to in writing.  The Company proposed non-economic items on June 1, 2009 (Union Ex. 5).  These items plus the target labor costs and the two-tiered system comport with Article

-10-

XXXIV, Section 2, of the parties' agreement. Those proposals introduced on June 2nd and June 3rd are discretionary items which the Union is free to bargain over or not.

(App. 22, Award, p. 10.)

The "Award" proper of the arbitrator's Opinion and Award states as follows: "The Company's proposal regarding $10 reduction in costs is a viable contract proposal as is the two-tiered system. Also, the Company's non-economic proposals made on June 1, 2009 are proper for consideration. The Company proposals made on June 2 and 3, 2009 are discretionary items for bargaining." (App. 23, Award, p. 11.)

Both parties understood the award to preclude PPG from imposing any proposals other than those the arbitrator had found timely (Doc. 22-3, Mordowanec Aff., ¶ 24-25). The parties differed, however, on which proposals the arbitrator had ruled timely. On December 8, 2009, PPG representative Mordowanec, as set forth in his summary-judgment affidavit below, "presented the Union with the Company's revised final offer based on the arbitrator's award." (Doc. 22-3, Mordowanec Aff., ¶ 24.)

By letter dated December 9, 2009 – one month and one day after the date of the arbitration award – PPG notified the Union that it would unilaterally implement the

terms of its "final offer" on December 14, 2009.  (Doc. 20-2, Mezo Aff., ¶ 11; Doc. 20-15.)  PPG did unilaterally implement this "final offer" on December 14, 2009 (Doc. 20-2, Mezo Aff., ¶ 11; Doc. 22-3, p. 73, *et seq.*, final offer).

The new terms of employment unilaterally imposed by PPG included economic concessions (from the Union's standpoint) in addition to the wage cuts for employees on the second tier of the two-tiered wage scale.  The imposed terms included wage cuts of $2 per hour for all active employees other than maintenance employees; cuts to employee benefits such as health insurance; and other reductions in economic benefits.  The imposed terms included concessionary terms (from the Union's standpoint) similar to or identical to those proposed by PPG on June 2 and June 3, 2009 (App. 6: Sept. 27, 2012 Order, p. 6; Doc. 20-2, Mezo Aff., ¶ 13).

*Opinion of the District Court*

In its Order dated Steptember 27, 2012, the District Court held that the arbitrator had approved every PPG proposal that was a means for PPG to reach its cost-savings goal.  With respect to the June 2, 2009, and June 3, 2009, proposals by PPG that the arbitrator found to be untimely, the District Court stated:  "The Union could come to accept the June 2 and 3 proposals as the least painful way to reach the $10 goal.  Hence, the arbitrator found the June 2 and 3 proposals to be discretionary items for bargaining."  (App. 7, Order of Sept. 27, 2012, p. 7.)

## SUMMARY OF ARGUMENT

The arbitrator ruled that most of PPG's economic proposals were untimely and further ruled that PPG's "proposals made subsequent to the first date of conference may not be permitted unless expressly agreed to in writing." The arbitrator's specific rejection of PPG's economic proposals made on June 2 and June 3, 2009, demonstrates that the arbitrator only approved one means for PPG to achieve its $10 labor cost reduction goal: wage reductions for employees on the second tier of the two-tiered wage scale. Therefore, all of the wage and benefit cuts imposed by PPG, other than wage cuts for employees on the second tier, were in violation of the arbitrator's award. The District Court's interpretation of the award cannot be correct, because under that interpretation, the award imposes no obligation whatsoever on PPG.

## ARGUMENT

## I.    Standard of Review

This Court reviews *de novo* the District Court's grant of summary judgment. *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 912 (7th Cir. 2010) (citing *Chaklos v. Stevens*, 560 F.3d 705, 710 (7th Cir. 2009)).

## II.    PPG Violated the Arbitrator's Award by Imposing Proposals That the Arbitrator Had Ruled Untimely.

The central issue in this case is whether it was a violation of the arbitrator's award for PPG to impose, as conditions of employment, proposals that the arbitrator had ruled untimely.  The "Award" proper of the arbitrator's Opinion and Award states as follows:  "The Company's proposal regarding $10 reduction in costs is a viable contract proposal as is the two-tiered system.  Also, the Company's non-economic proposals made on June 1, 2009 are proper for consideration.  The Company proposals made on June 2 and 3, 2009 are discretionary items for bargaining."  (App. 23, p. 11.)

### A.    "Discretionary" Means "May Not Be Permitted Unless Agreed."

By itself, the three-sentence "Award" does not indicate whether PPG is prohibited from imposing those proposals that "are discretionary items for bargaining."  However, the preceding "Opinion" of the arbitrator, which begins on p. 9 of the award, does make it clear that PPG is prohibited from imposing "discretionary" items.  The arbitrator stated that "[p]roposals made after the first day of the [negotiating] conference are invalid" (App. 21, Award, p. 9), and he ruled that PPG's "proposals made subsequent to the first date of conference may not be permitted unless expressly agreed to in writing."  (App. 22, Award, p. 10.)

-14-

The dispositive paragraph from the arbitrator's opinion in which he actually introduces the controverted term "discretionary" reads, in full, as follows:

> However, proposals made subsequent to the first date of conference may not be permitted unless expressly agreed to in writing. The Company proposed non-economic items on June 1, 2009 (Union Ex. 5). These items plus the target labor costs and the two-tiered system comport with Article XXXIV, Section 2, of the parties' agreement. Those proposals introduced on June 2nd and June 3rd are discretionary items which the Union is free to bargain over or not.

(App. 22, Award, p. 10.)

It is obvious here that the last sentence of the paragraph, identifying the proposals made after the first day of conference and terming them "discretionary," refers to the same subject matter as the first sentence of the paragraph, regarding "proposals made subsequent to the first date of conference." To the extent there is an ambiguity in the last sentence, it is elucidated by that first sentence: "[P]roposals made subsequent to the first date of conference may not be permitted unless expressly agreed to in writing." Thus, a "discretionary" item is one that "may not be permitted unless expressly agreed to in writing."

-15-

**B.    Any Ambiguity in the Arbitrator's Award May Be Resolved by Referring to His Opinion.**

This Court has repeatedly held that "a court is permitted to interpret and enforce an ambiguous [arbitration] award if the ambiguity can be resolved from the record." *Tri-State Business Machines, Inc. v. Lanier Worldwide, Inc.*, 221 F.3d 1015, 1017 (7th Cir. 2000), *quoting Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 280 (7th Cir.1992). An ambiguity in the short "award" portion of the arbitrator's decision can certainly be resolved by referring to the arbitrator's opinion. *See, e.g.*, *Williams v. U.S. Steel, Div. of USX Corp.*, 70 F.3d 944 (7th Cir. 1995) (opinion of arbitrator clarifies date from which grievant was entitled to back pay).

The agreement between the parties herein provides that both parties shall comply with arbitration "decisions" (Doc. 20-5, 2002 Agreement, p. 4), which suggests that the arbitrator's "Opinion" as well as his three-sentence "Award" proper may be binding on the parties. In any event, even if only the "Award" proper is binding, this Court may and should resolve any ambiguity in the award by referring to the opinion of the arbitrator, which makes it clear that PPG's unilateral implementation of untimely proposals is a violation of the award.

*Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274 (7th Cir. 1989), is an analogous case, except that the award in that case was perhaps more ambiguous

-16-

than the award herein.  In *B & M Transit*, the union filed a grievance against the employer, B & M, "protesting that B & M casual drivers and owner-driver Thomas G. McCaffrey had not joined the Union as required by the collective bargaining agreement." *B & M Transit*, 882 F.2d at 275.  A joint grievance committee (treated by the court as an arbitration panel) specifically ruled that the owner-driver was required to join the union, but the panel failed to mention the casual drivers who were also at issue.[2]  The court held that in the context of the record, it was clear that the grievance committee upheld the union's grievance as to the casual drivers, and not only as to the owner-driver who was specifically mentioned.  *B & M Transit*, 882 F.2d at 278-79.

There are numerous other Seventh Circuit cases in which the court has interpreted an arbitration award to resolve apparent or alleged ambiguity.  *See*, *e.g.*, *Brotherhood of Locomotive Engineers and Trainmen v. Union Pacific R. Co.*, 500 F.3d 591 (7th Cir. 2007); *Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 188 (7th Cir.1985).  In both of these cases, this Court interpreted the arbitration award as urged by the union, reversing a contrary decision of the district court.  If this

---

2      The panel's decision was as follows: "Thomas G. McCaffrey comes within the bargaining unit covered by the labor agreement between the parties. The company is instructed to comply with the terms of its labor agreement with Local 579 including the Addendum thereto." *B & M Transit*, 882 F.2d at 276.

Court finds that the award in this case is ambiguous, the award should be interpreted in the only way that will not render it meaningless and that will be consistent with all the arbitrator's statements: PPG's unilateral implementation of its untimely proposals violated the award.

### C.    Post-Arbitration Conduct of the Parties

If there is any remaining ambiguity in the award, it may be resolved by considering the post-arbitration conduct of the parties and their post-hearing briefs to the arbitrator.  Before the commencement of this litigation, PPG, like the Union, interpreted the arbitrator's award as prohibiting it from imposing proposals that the arbitrator found untimely.  Thus, at the December 8, 2009 meeting between the parties, PPG purported to withdraw from its final offer all proposals that the arbitrator did not approve as timely.

PPG had made a "final offer" to the Union on September 9, 2009, before the arbitrator issued his award on November 8, 2009.  On December 8, 2009, PPG representative Mordowanec, as set forth in his summary-judgment affidavit below, "presented the Union with the Company's revised final offer based on the arbitrator's award." (Doc. 22-3, Mordowanec aff., ¶ 24.) Mordowanec "told the Union that PPG had revised its September 9 offer as follows:  any Company proposals presented after the first day [of negotiations] that were not related to the Company's proposal to

-18-

reduce labor costs by $10.00 and implementation of the two-tier wage schedule had been removed." (Doc. 22-3, Mordowanec aff., ¶ 25.)

As argued further below, PPG incorrectly interprets the arbitration award as permitting all proposals that reduce labor costs up to $10 per hour, no matter how that reduction is accomplished. The arbitration award did approve a $10 per hour cost reduction as the maximum concession PPG could propose, but it only approved one means of achieving that reduction: wage reductions for employees on the second tier of the wage scale. PPG's proposals involving non-wage economic concessions, and wage concessions for active employees, were ruled untimely.

However, it is very instructive that PPG originally understood the arbitration award to prohibit it from including in its final offer (and subsequently implementing) any proposal that the arbitrator did not find to be timely. PPG's current litigation position is different from this original understanding. PPG now denies that the arbitration award prohibited it from including in its proposal, and subsequently implementing, proposals found untimely by the arbitrator. But it did not take this position before this litigation commenced. And indeed, an echo of PPG's pre-litigation understanding of the award even continued into this litigation: PPG continued to claim, in its responsive summary-judgment brief below, that it complied with the arbitrator's award by modifying its proposals on December 8, 2009: "[T]he

facts show that PPG complied with the award by limiting its final bargaining proposal to those proposals deemed valid by the arbitrator." (Doc. 23, PPG Response brf., p. 1.)

### D.    Briefs to the Arbitrator

In their briefs to the arbitrator, both parties likewise assumed that if the arbitrator ruled that PPG's proposals were untimely, PPG would be prohibited from imposing those proposals as conditions of employment.  PPG's brief contained the following statements indicating its understanding of this consequence:

> The Union clearly filed the grievance initiating this proceeding to avoid bargaining over PPG's concessionary proposals (including the possibility of bargaining to impasse) and so that any concessionary bargaining would only be on terms it deemed acceptable

(Pl. SJ Exh. O, PPG arbitration brf., p. 11.)

> The Union here asks the arbitrator to . . . invalidate PPG proposals, including its proposed economic concessions, so that unless the Union consents, the unsustainable economic terms of the 2008-09 agreement become part of the next contract.

(Doc. 20-26, PPG arbitration brf., p. 13.)

The Union, for its part, requested the following relief in the Conclusion of its post-hearing brief: "[T]he Union respectfully requests that the arbitrator find that all proposed changes offered by PPG after the end of June 1, 2009 – including all

economic proposals – were untimely and in violation of Article XXXIV of the Agreement and are therefore invalid.  As a remedy, the Union requests that the arbitrator order PPG not to insist upon or unilaterally implement any of its invalid proposals."  (Doc. 20-25, Union arbitration brf., pp. 19-20.)

While the arbitrator did not grant the requested relief as explicitly as stated by the Union, he did state that "[p]roposals made after the first day of conference are invalid" (App. 21, Award, p. 9), thus using the terminology the Union had requested. Moreover, the arbitrator's ruling that "proposals made subsequent to the first day of conference may not be permitted unless expressly agreed to in writing" (App. 22, Award, p. 10) is equivalent to a ruling that "PPG may not insist upon or unilaterally implement any of its invalid proposals."  If an untimely and invalid proposal may be permitted when expressly agreed to in writing, when may it not be permitted? Clearly, when it is imposed unilaterally.

In *B & M Transit, Inc.*, 882 F.2d 274 (7th Cir. 1989), as in this case, the Union had requested relief that was not specifically granted, but the court determined that the relief was intended.  Here, as well, though the arbitrator only partly used the same language as the Union, it is clear that the arbitrator intended to grant the Union's requested relief as to that part of the grievance that he upheld.

-21-

As the arbitrator did state that "[p]roposals made after the first day of conference are invalid" (App. 21, Award, p. 9), it should also be noted that PPG, in its own post-hearing brief, repeatedly framed the issue as whether any of its proposals were "invalid," while assuming, as noted, that an invalid proposal could not be unilaterally imposed:

> The arbitrator may not in any event invalidate PPG proposals made after June 1 . . .

(Doc. 20-26, PPG arbitration brf., p. 12.)

> [N]othing in Article XXXIV, Section 2 indicates that a proposal made after the first day of conference is invalid. . . .

(Doc. 20-26, PPG arbitration brf., p. 12.)

> The Union here asks the arbitrator to . . . invalidate PPG proposals, including its proposed economic concessions, so that unless the Union consents, the unsustainable economic terms of the 2008-09 agreement become part of the next contract. . . .

(Doc. 20-26, PPG arbitration brf., p. 13.)

> [B]y asking the arbitrator to invalidate PPG's proposals, the Union is asking the arbitrator to effect a prospective bargaining waiver by PPG.

(Doc. 20-26, PPG arbitration brf., p. 13.)

### E.     The District Court  Rendered the Award Meaningless.

Contrary to the manifest meaning of the arbitrator's Opinion and the positions of the parties both before the arbitrator and subsequent to receiving the award, the District Court interpreted the award as imposing no obligation whatsoever on PPG. In a description of the award that is obviously and utterly foreign to the award itself, the District Court stated:   "The Union could come to accept the June 2 and 3 proposals as the least painful way to reach the $10 goal.  Hence, the arbitrator found the June 2 and 3 proposals to be discretionary items for bargaining."  (App. 7, Order of Sept. 27, 2012, p. 7.)  In other words, the Union was done a favor by being allowed to accept and (absent acceptance) having imposed on it the very proposals that the arbitrator termed "invalid" and that the arbitrator ruled "may not be permitted unless expressly agreed to in writing."

In its motion to reconsider, the Union pointed out that the District Court ignored, in its opinion, all of the dispositive parts of the arbitrator's Opinion on which the Union relied.  The Union demonstrated that the term "discretionary" means "may not be permitted unless agreed" – based, again, on the paragraph in which the arbitrator introduced the term "discretionary":

> However, proposals made subsequent to the first date of conference may not be permitted unless expressly agreed to in writing.  The Company proposed non-economic items

> on June 1, 2009 (Union Ex. 5). These items plus the target
> labor costs and the two-tiered system comport with Article
> XXXIV, Section 2, of the parties' agreement. Those
> proposals introduced on June 2nd and June 3rd are
> discretionary items which the Union is free to bargain over
> or not.

(App. 22, Award, p. 10.)  In its order denying the Union's Rule 59 motion, the

District Court responded to this argument:

> It can just as easily be said that the arbitrator defined a
> "discretionary" item for bargaining as one that "the Union
> is free to bargain over or not."

(App. 10, Order of June 5, 2013, p. 2.)  The District Court's terminology here ("just

as easily") does not evince much confidence in its interpretation of the award.  But

more importantly, it is obviously incorrect to assume that "discretionary" means "free

to bargain over or not" or "may not be permitted unless agreed," but not both.

Obviously, the term "discretionary" in the award does mean *both* "free to bargain

over or not" and "may not be permitted unless agreed."  The Union's interpretation

of the award gives full effect to all parts of the Opinion and Award, while the District

Court reads out of the Opinion all statements that impose any obligation on PPG.

Not only is there no inconsistency in concluding that the arbitrator meant both

"free to bargain over or not" and "may not be permitted unless agreed," each of these

things logically accompanies the other.  Under labor law, a "permissive" subject of

-24-

bargaining is one that a party may not be required to bargain over and also (if it is permissive in favor of the union) one that the employer may not impose, even after bargaining to impasse. An example is modification of the scope of the bargaining unit. *See, e.g., N.L.R.B. v. Solutia, Inc.*, 699 F.3d 50, 70 (1st Cir. 2012) ("Unit modification is a permissive, not mandatory, subject of bargaining. . . . Permissive subjects cannot be bargained to impasse or unilaterally implemented; the consent of the other party is required to alter agreements on these subjects.")

The arbitrator was not applying NLRB law, and he used the term "discretionary" rather than "permissive." Nevertheless, the result he explicitly reached under the parties' contract was similar to the effect reached when the NLRB finds a topic permissive in favor of the union: the union cannot be required to bargain over the topic, and no unilateral change may be made by the employer, even after an impasse in bargaining has been reached. At the Union's option, the relevant terms continue in force. The District Court was thus incorrect to believe that defining "discretionary" as "free to bargain over or not" was somehow an alternative to defining "discretionary" as "may not be permitted unless expressly agreed to in writing." The arbitrator used both terms, his award is elucidated by both terms, and both terms go together logically.

## F.     Concerns of Unfairness

The Union believes that the District Court's manifestly incorrect interpretation of the award, as demonstrated in this section of the Argument and the following section, may derive from the perceived unfairness of imposing so great a penalty on the employer as a result of its untimely bargaining proposals.  In this connection, the Union would note that in a previous negotiation, the Union tried to remove from the parties' contract the requirement that changes be proposed on the first day of conference – but PPG refused to allow this.  The Union also believes that many actions taken by PPG can be considered unfair.  But the main point is PPG made its argument concerning the harshness of Article XXXIV to the arbitrator, and the arbitrator rejected it.  In his Opinion, the arbitrator stated:  "Article XXXIV can be likened to any timeliness provision in a contract.  The parties negotiate such language for a reason.  Whether that reason is wise or not is not an arbitrator's job to fathom. We exist to enforce the provisions of the collective bargaining agreement as they exist.  I would exceed my authority to do otherwise."  (App. 22, Award, p. 10.) Incidentally, this is one of many parts of the Arbitrator's opinion that confirm the arbitrator's understanding (similar to that of the Union and PPG at the time) that the arbitrator was imposing a real cost and consequence on PPG for its untimely proposals and not issuing a meaningless award.

### III. All Economic Concessionary Terms Other Than Lower Wages for 2nd-tier Employees Are Invalid.

Having established that it was a violation of the arbitrator's award for PPG to impose, as conditions of employment, proposals that the arbitrator had ruled untimely, the next issue is to determine which proposals the arbitrator found timely and untimely. PPG's position, which essentially was adopted by the District Court, is that the arbitrator found all of its proposals timely and found none of them untimely. That, again, is obviously incorrect.

#### A. The Arbitrator Did Not Rule That All of PPG's Proposals Were Timely.

The "Award" proper of the arbitrator's Opinion and Award states, again, as follows: "The Company's proposal regarding $10 reduction in costs is a viable contract proposal as is the two-tiered system. Also, the Company's non-economic proposals made on June 1, 2009 are proper for consideration. The Company proposals made on June 2 and 3, 2009 are discretionary items for bargaining." (App. 23, Arbitration Award, p. 11.)

The record is clear that on June 2 and June 3, 2009, PPG made economic proposals to reduce wages and benefits for employees in the bottom tier of the two-tiered wage structure and also to reduce wages and benefits for employees in the top tier. The concessionary terms imposed by PPG after impasse were similar or identical

-27-

to these proposals made on June 2 and June 3 (App. 6: Sept. 27, 2012 Order, p. 6; Doc. 20-2, Mezo Aff., ¶ 13). PPG's position is that because the arbitrator approved PPG's target $10 reduction in labor costs, he approved any means by which PPG might want to reach that target. But the arbitrator obviously did not adopt PPG's position. If the arbitrator had adopted PPG's position, he would not have ruled that PPG's economic proposals made on June 2 and June 3 were untimely. Those proposals were the means by which PPG sought to achieve the $10 cost reduction. Since the arbitrator ruled those proposals invalid, he did not approve as timely any and all means to achieve the $10 cost reduction. Rather, he only approved one means: "the two-tiered system."

This conclusion is also evident from the "Opinion" part of the arbitrator's award:

> Therefore, the Union knew or should have know[n] some of the Company's economic proposals – specifically the Employer's labor cost goals as well as the two-tier wage structure. The Company has preserved these proposals on the basis that the language of Article XXXIV, Section 2, permits, as previously discussed, discussion of proposals prior to the first day of conference.

> However, proposals made subsequent to the first date of conference may not be permitted unless expressly agreed to in writing. The Company proposed non-economic items on June 1, 2009 (Union Ex. 5). These items plus the target labor costs and the two-tiered system comport with Article

-28-

> XXXIV, Section 2, of the parties' agreement.  Those proposals introduced on June 2nd and June 3rd are discretionary items which the Union is free to bargain over or not.

(App. 22, Award, p. 10.)  Once again, the distinction between the "non-economic items" proposed on June 1, which were ruled timely, and the proposals made on June 2 and June 3, which were ruled untimely, obviously means that the economic proposals made on June 2 and June 3 were untimely.

In its Opinion dated September 27, 2012, the District Court distorted the arbitration award, interpreting it so as to find timely, in effect, all the proposals that the arbitrator actually found untimely.  The District Court actually altered the meaning of the award by quoting only parts of sentences from the arbitrator's opinion, giving them a meaning that would be negated by a reading of the full sentence.  Thus, the District Court quoted part of a sentence from the arbitrator's opinion stating that "the Union knew or should have know[n] some of the Company's economic proposals."  (App. 6, quoting Award, p. 10.)  The District Court then elaborated, as if giving the meaning intended by the arbitrator:  "More specifically, the Union knew or should have known prior to June 1 that the company could not meet the $10 target through the two-tiered system alone."  (App. 6.)  However, the actual sentence from the arbitrator's opinion, quoted in part by the Court, contains its

own elaboration, its own "specifically," which gives the sentence a true meaning almost the opposite of the meaning assigned by the Court. The full sentence from the arbitrator's opinion reads: "Therefore, the Union knew or should have know[n] some of the Company's economic proposals – *specifically the Employer's labor cost goals as well as the two-tier wage structure*." (App. 22, Award, p. 10, emphasis added.) There is no reference in this sentence (which occurs in the dispositive part of the arbitrator's opinion) to the Union's supposed knowledge that PPG could not meet its cost target through the two-tiered system alone.

The District Court also stated, as if relating the arbitrator's position: "The Union was aware that 'the Fresno arrangement would not be enough,' and was also aware, from meeting with PPG on May 14 and receiving its email on May 28, that economic concessions would be needed." (App. 6.) But the actual sentence from which the District Court quoted is as follows: "Mr. Mordowanec [a PPG representative] indicated that the Fresno arrangement would not be enough, and that new hired and recalled employees would be placed on the bottom of the two-tiered system." (App. 22, Award, p. 10.) This sentence could be interpreted as meaning that the way in which the employer would go beyond the Fresno arrangement would be to place recalled as well as new employees at the bottom tier (the Union is not certain whether recalled employees were on the bottom tier in the Fresno arrangement). And

-30-

even if that were not the arbitrator's meaning, obviously the arbitrator is much more focused on the two-tiered system in this sentence than the Court's partial quotation seems to suggest.

Also, the District Court quoted at length the arbitrator's discussion of how specific proposals have to be, as if that discussion were in a dispositive part of the arbitrator's opinion and elucidated the arbitrator's award. In fact, this discussion occurs in a preliminary part of the arbitrator's opinion, and before the arbitrator determined that PPG's proposals made on June 2 and June 3 were untimely.

The arbitrator made various statements in his Opinion – relating to the specificity required in proposals, the Union's knowledge of PPG's overall labor cost goals, etc. – which the arbitrator theoretically *could* have relied on to find that all of PPG's economic proposals were timely. However, the arbitrator did not find that all of PPG's proposals were timely; he found that the proposals made on June 2 and 3, 2009, were untimely. Therefore, it was wrong for the District Court to rely on these statements of the arbitrator, in effect to rule timely what the arbitrator had ruled untimely.

In its Order of September 27, 2012, the District Court also notes that some terms of employment unilaterally imposed by PPG were not identical to the employer's proposals made on June 2 and June 3 and found untimely by the

arbitrator. The Union submits that since the proposals not made until June 2 and June 3 were ruled untimely, it is obvious, under the award, that proposals not even raised until after June 3 are *a fortiori* untimely. As the arbitrator stated, "proposals made subsequent to the first date of conference may not be permitted unless expressly agreed to in writing." (App. 22, Award, p. 10.) After all, Article XXXIV of the contract (Sections 1 and 2) continues in effect terms that are not properly terminated.

### B. The Only Economic Concession Approved by the Arbitrator Was Wage Cuts for Employees in the Bottom Tier.

The only economic proposal that the arbitrator ruled timely – the only means of reaching cost reductions that he did not invalidate – was "the two-tiered system." The question then becomes: what is included within "the two-tiered system"? First, of all, it is clear that by approving PPG's proposed two-tiered wage system, the arbitrator did not mean to approve *benefit* reductions for employees in either the lower tier or the higher tier. The arbitrator repeatedly and interchangeably referred to the two-tiered system as the "two-tier wage structure" (App. 22, Award, p. 10: "The Fresno agreement . . . contained a two-tier wage structure . . . . The Union knew or should have know[n] some of the Company's economic proposals – specifically the Employer's labor cost goals as well as the two-tier wage structure.") In his affidavit filed in support of PPG's motion for summary judgment, PPG representative

Mordowanec also refers to the two-tiered system as a wage structure: "I told the Union that PPG had revised its September 9 offer as follows: any Company proposals presented after the first day that were not related to the Company's proposal to reduce labor costs by $10.00 and implementation of the two-tier wage schedule had been removed." (Doc. 22-3, Mordowanec aff., ¶ 25.) Thus, the arbitrator did not approve, as timely, *benefit* reductions for employees on the second tier of the two-tiered system.

In its proposal on June 2, 2009, PPG included a number of benefit reductions for employees on the second tier. For example, it provided the following on the first page of the "Mt. Zion Group Benefits Plan": "Employees hired on or after June 16, 2009 are not eligible for retiree life insurance coverage. Employees hired prior to June 16, 2009 and who are on lay-off status as of June 1, 2009 or who are laid-off at any time in the future, are not eligible for retiree life insurance coverage." (Doc. #22-4, p. 93 of 100.) As implemented in December, 2009, the first page of the "Mt. Zion Group Benefits Plan" likewise provided: "Employees hired on or after June 16, 2009 are not eligible for retiree life insurance coverage. Employees who are on lay-off status as of June 15, 2009 are not eligible for retiree life insurance coverage." (Doc. #22-3, p. 84 of 306.) Clearly, such benefit reductions for employees in the

second tier are not part of the two-tiered system approved by the arbitrator and are therefore untimely.

A review of the record also makes it clear that by endorsing the two-tiered wage structure as a timely proposal, the arbitrator was only endorsing wage cuts for employees on the second tier. All of the arbitrator's descriptions of the two-tier system involve reducing wages for the second tier, not the first tier. In the arbitrator's discussions of what he considered timely PPG proposals, the only reference he made to a proposal concerning the wages of active employees involved a wage *increase* for "[g]eneral maintenance workers." (App. 15, Award, p. 3.) The arbitrator also referenced the chart that Mordowanec sent to Mezo, containing a hypothetical two-tiered system (App. 16, Award, p. 4), but that chart did not show any wage reductions for current employees (Doc. 20-2, Mezo Aff., ¶ 5). It was only on June 3, 2009, that PPG proposed specific wage rates for active employees, which involved wage cuts for those employees (App. 17, Award, p. 5). Accordingly, the arbitrator did not find that a proposal to reduce the wages of active employees was timely – that is not part of what the arbitrator meant by "the two-tiered system" (App. 22, Award, p. 10). PPG's unilateral implementation of wage cuts for active employees therefore violated the arbitration award, as did all of the benefit cuts that PPG imposed.

## CONCLUSION

In the District Court, the Union sought summary judgment on the issue of liability. For the reasons set forth above, the Union respectfully requests that this Court reverse the decision of the District Court and remand this case with instructions to enter summary judgment for the union on the issue of liability. PPG should be ordered to revoke all the economic concessionary terms that it imposed that were ruled untimely by the arbitrator (that is, all economic concessionary terms except the wage cuts for employees on the bottom tier of the two-tiered wage structure). PPG should further be required to make the affected employees and the Union whole. The amount of damages, and the length of time that PPG is required to maintain pre-existing conditions, are issues that should be addressed on remand.

Respectfully submitted,

CORNFIELD AND FELDMAN LLP

Dated: September 12, 2013          By:    /s/ Stephen A. Yokich
                                                   Stephen A. Yokich

CORNFIELD AND FELDMAN LLP
Suite 1400                                    Attorneys for Plaintiffs-Appellants USW and
25 East Washington Street            its Local Union 193-G
Chicago, Illinois  60602-1803
(312) 236-7800
(312) 236-6686 (fax)

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that the foregoing Brief of Plaintiffs-Appellants:

1.    Complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) inasmuch as it contains 7,766 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.    Complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a porportionally spaced typeface using WordPerfect 12, in 14-point Times New Roman.

/s/ Stephen A. Yokich
Stephen A. Yokich

One of the attorneys for Plaintiffs-Appellants

Dated:  September 12, 2013

# CERTIFICATE OF SERVICE

I, Stephen A. Yokich, an attorney, hereby certify that on September 12, 2013, I caused the foregoing **Brief and Appendix of Plaintiffs-Appellants** to be filed electronically with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that, as of September 12, 2013, all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Stephen A. Yokich
Stephen A. Yokich

One of the attorneys for Plaintiffs-Appellants

Dated: September 12, 2013